# NO. 23-1733

# United States Court of Appeals
### for the
# Fourth Circuit

HARFORD MUTUAL INSURANCE GROUP, INC., and
THE HARFORD MUTUAL INSURANCE COMPANY,

*Defendants-Appellants,*

*v.*

J.H. and E.H. by and through their Guardian *Ad Litem*, ERICA CHAMBERS and
ERICA CHAMBERS, individually,

*Plaintiffs-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

## BRIEF OF APPELLEES J.H. and E.H. by and through their Guardian *Ad Litem,* ERICA CHAMBERS and ERICA CHAMBERS, individually

Coleman M. Cowan – N.C. State Bar No.
Kaitlyn E. Fudge – N.C. State Bar No. 54829
**LAW OFFICES OF JAMES SCOTT FARRIN**
555 S. Mangum Street, Suite 800
Durham, North Carolina 27701
ccowan@farrin.com
kfudge@farrin.com
T: (919) 688-4991 F: (919) 939-0901
*Counsel for Appellees*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _23-1733_      Caption: _J.H., et al. v. Harford Mutual Insurance Group, Inc., et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_J.H., by and through Guardian Ad Litem, Erica Chambers_
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Kaitlyn E. Fudge                                    Date: 11/2/2023

Counsel for: Appellees

- 2 -

[ Print to PDF for Filing ]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _23-1733_          Caption: _J.H., et al. v. Harford Mutual Insurance Group, Inc., et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_E.H., by and through Guardian Ad Litem, Erica Chambers_
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?  ☐ YES ☑ NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Kaitlyn E. Fudge          Date: 11/2/2023

Counsel for: Appellees

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1733__    Caption: __J.H., et al. v. Harford Mutual Insurance Group, Inc., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Erica Chambers__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Kaitlyn E. Fudge                          Date: 11/2/2023

Counsel for: Appellees

- 2 -

Print to PDF for Filing

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………..i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE FACTS ............................................................1

  October 27, 2018 Incident ................................................................1

  Language of Harford Mutual's Excess Umbrella Policy .......................3

  The Litigation Agreement ................................................................4

SUMMARY OF ARGUMENT .............................................................6

ARGUMENT ...................................................................................7

  I.     The District Court Correctly Determined That the Big Boss Excess Policy Afforded Coverage...................................................................7

      A.  The Excess Policy covers negligent entrustment claims. .................7

      B.  The plain language of the Automobile Exclusion in the policy does not exclude entrustment claims, and Defendant's argument is based on a misreading of Judge Auld's opinion.........................................8

         1.  The District Court appropriately examined the insurance policy as a whole and used the plain meaning of the written terms to conclude that the exclusion does not exclude negligent entrustment claims. ........................................................................9

         2.  Under North Carolina law, it does not matter that negligent entrustment claims are derived from the ownership, operation, or use of an automobile. ..................................................................12

C.   Alternatively, the policy language is ambiguous, and the Court must construe it to provide coverage. ........................................................18

II.   The District Court correctly determined Harford is obligated to pay interest. ................................................................................................22

A.   Although a valid contract, the Litigation Agreement does not modify the interest provisions in the insurance policy. ................................22

B.   Harford waived all arguments that they do not have to pay interest because there is no judgment. ...........................................................26

CONCLUSION ...................................................................................................29

STATEMENT REGARDING ORAL ARGUMENT ............................................32

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .................33

# TABLE OF AUTHORITIES

## CASES

*Allstate Ins. Co. v. Lahoud*, 605 S.E.2d 180 (N.C. App. 2004)................................7

*Baxley v. Nationwide Mut. Ins. Co.*, 430 S.E.2d 895, 900 (N.C. 1993) .................29

*Bolton Corp. v. T.A. Loving Co.*, 347 S.E.2d 369 (N.C. 1986) ...............................10

*Brown v. Lumbermens Mut. Cas. Co.*, 390 S.E.2d 150, 153 (N.C. 1990)...............21

*Cone v. Nationwide Mut. Fire Ins. Co.*, 551 N.E.2d 92 (N.Y. 1989).....................20

*Cowell v. Gaston County*, 660 S.E.2d 915, 918 (N.C. App. 2008) ........................22

*De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 531 (4th Cir. 2022).........27

*Dodd v. Auto. Ins. Co. of Hartford*, No. 2:05 CV 216, 2007 WL 203983, at *6 (W.D.N.C. Jan. 24, 2007) ......................................................................................15

*Douglass v. Hartford Ins. Co.*, 602 F.2d 934, 938 (10th Cir. 1979) ............... 20, 21

*Estate of Mitchell v. American Reliable Ins. Co.,* 349 F. App'x 151 (9th Cir. 2009) ................................................................................................................. 17, 19, 21

*Fidelity & Cas. Co. of N.Y. v. North Carolina Farm Bureau Mut. Ins. Co.*, 192 S.E.2d 113, 117 (N.C. App. 1972) .......................................................................11

*Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 467 (N.C. 2000) .................................7

*Gilliam v. Allen*, 62 F.4th 829, 848 (4th Cir. 2023)...............................................29

*Grant v. Emmco Ins. Co.*, 243 S.E.2d 894, 897 (N.C. 1978) .................................22

*Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)................26

*Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 692 S.E.2d 605, 612 (N.C. 2010) ..................................................................................................... 10, 11

*In re Under Seal v. Lavabit, LLC, et al.*, 749 F.3d 276, 285 (4th Cir. 2014) ..........24

*Joyner v. Adams*, 361 S.E.2d 902, 905 (N.C. App. 1987) .......................................19

*Marquis v. State Farm Fire and Cas. Co.*, 961 P.2d 1213 (Kan. 1998).................17

*N.C. Counties Liability and Prop. Joint Risk. Mgt Agency v. Currey*, 662 S.E.2d 678, 682-83 (N.C. App. 2008)................................................................................21

*Nationwide Mutual Insurance v. Davis*, 455 S.E.2d 892, 893 (N.C. App. 1995) …………………………………………………………………………………….14, 15, 16

*Nationwide Mut. Ins. Co. v. Mabe*, 467 S.E.2d 34, 39 (N.C. 1996) .......................23

*NC Farm Bureau Mut. Ins. Co. v. Martin*, 851 S.E.2d 891, 895 (N.C. 2020) …………………………………………………………………………………….10, 11, 18

*NovaQuest Cap. Mgmt., L.L.C. v. Bullard*, 498 F. Supp. 3d 820, 832 (E.D.N.C. 2020) ....................................................................................................................9

*Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 432-35 (Colo. 2008) ................ 27, 28

*Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 10301 (4th Cir. 1993) ......29

*Southern Speeding Serv., Inc. v. E.C. Eng., Inc.*, 719 S.E.2d 211, 215 (N.C. App. 2011) ....................................................................................................................10

*Standard Mutual Insurance Company v. Bailey*, 868 F.2d 893 (7th Cir. 1989)……………………………………………………………………………..16, 17

*State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 68 (N.C. 1986) ......................................................................................... 13, 14, 15, 18, 21

*Tarashuk v. Givens*, 53 F.4th 154, 167 (4th Cir. 2022) ..........................................24

*United States v. Boyd*, 5 F.4th 550, 554 (4th Cir. 2021).........................................26

*Upland Mut. Ins. Inc. v. Noel*, 519 P.2d 737 (Kan. 1974) ......................................20

*Ussery v. Branch Banking & Tr. Co.*, 777 S.E.2d 272 (N.C. 2015)..........................9

*Weyerhaeuser Co. v. Carolina Power & Light Co.*, 127 S.E.2d 539, 541 (N.C. 1962) ....................................................................................................12

*Wilkerson ex rel. Estate of Wilkerson v. Nelson*, 395 F. Supp. 2d 281, 289 (M.D.N.C. 2005)....................................................................................19

*Wilkins v. American Motorists Insurance Company* 388 S.E.2d 191 (N.C. App. 1990)…………………………………………………………………16

*Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 777 (N.C. 1978) ........... 11, 18

## **STATUTES**

28 U.S.C. § 1961(a) ..............................................................................28
28 U.S.C. § 2201 ..................................................................................28

## **RULES**

Fed. R. Civ. P. 57 ................................................................................28

## STATEMENT OF THE FACTS

*October 27, 2018 Incident*

J.H. and E.H. are minors who were traveling in a car with their mother,

Plaintiff Erica Chambers, when Carlos Alberto Ramirez hit them head-on while

driving a work truck on October 27, 2018. (JA12). The incident catastrophically

injured Erica Chambers. It hospitalized her for over a month and broke bones

throughout her body, and medical providers put her in a cranial halo fused to her

skull for three months. In total, she has had six surgeries and will need at least one

more in the future. (JA8). Emergency responders found E.H. crumpled up under

the dashboard of the vehicle. She suffered a head injury and continues to

experience memory issues. (JA8). J.H. broke her leg. (JA8). Beyond their physical

injuries, the incident has been difficult both emotionally and financially on the

family because Erica is a single mother and was unable to care for her daughters

for a significant period due to her injuries.

Big Boss Construction, Inc., ("Big Boss") owned the work truck involved in

the collision. (JA14). NC Champions Construction, Inc., a company which is no

longer in business, had access to and used the truck for its business with the

permission of Big Boss. On the day before the collision, NC Champions

Construction gave the truck to one of its work crews to transport the workers,

materials, and equipment to an NC Champions job site the following day. (JA11-

JA12; JA237). The work crew were employees of NC Champions and agents of

Big Boss. *See* (JA14; JA233). All three individuals in the work truck, including the

driver, were unlicensed and undocumented construction workers. (JA13). Big Boss

negligently entrusted its vehicle to a driver it knew was unlicensed and

unauthorized to drive in the United States. (JA28).

At the time of the collision, Defendants-Appellants Harford Mutual

Insurance ("Harford") provided a commercial excess umbrella policy to Big Boss

with liability limits of $2 million aggregate. (JA16).[1] In November 2019, Harford

denied coverage to Big Boss claiming application of automobile exclusions in the

policies. (JA17; *see also* JA204-205). Because of Harford's denials, the only

admitted liability insurance coverage came from an Integon automobile liability

policy for the Big Boss truck with limits of only $50,000 per person and $100,000

per accident. The medical bills alone for Plaintiffs' injuries are more than

$500,000. (JA8).

---

[1] Harford also issued a commercial general liability policy to Big Boss which
included "entrustment to others" in an automobile exclusion and a commercial
general liability policy to NC Champions Construction. (JA363 (automobile
exclusion in Big Boss CGL policy); JA9; JA434). On an unrelated issue, Judge
Auld ruled that the NC Champions policy did not provide coverage to plaintiffs.
(JA591-599). These policies are not the subject of this appeal.

*Language of Harford Mutual's Excess Umbrella Policy*

The Big Boss excess umbrella policy included coverage for automobile claims in its base policy language. (JA17-18; JA435). The Big Boss excess umbrella policy states that it provides coverage for bodily injury claims caused by an "occurrence" which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (JA159). The Big Boss policy defines an "Insured" as any person operating an automobile and any organization responsible for the conduct of such driver. (JA149).

The policy also included an endorsement which modified this base insurance by excluding certain, specified types of automobile liability:

**AUTOMOBILE LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY**

It is agreed this policy shall not apply to any liability for **bodily injury, personal injury** or **property damage** arising out of the ownership, maintenance, operation, use, **loading or unloading** of any **automobile**.

(JA186). The terms of Harford's Automobile Liability Exclusion do not include "entrustment to others." In other words, negligent entrustment claims are not included within the scope of the Automobile Liability Exclusion.

In other sections of the same policy written by the same insurer, other endorsements not applicable to this case exclude "entrustment to others," excluding coverage for negligent entrustment claims for aircraft or watercraft:

3

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AIRCRAFT, UNMANNED AIRCRAFT AND WATERCRAFT LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY

Exclusion h. is deleted and replaced by the following:

Bodily injury, property damage, personal injury or advertising injury arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any aircraft, unmanned aircraft or watercraft.

(JA167) (highlight added).

### The Litigation Agreement

In February 2022, the parties (including Harford) entered into a Litigation Agreement to resolve legal issues in the Underlying Action and to streamline the coverage issues central to this Declaratory Judgment Action. (JA207). As part of this Agreement, the parties stipulated to liability on all claims, including stipulating that Big Boss was negligent in entrusting its vehicle (JA207). The parties further stipulated that all facts and conclusions of law pled in the Second Amended Complaint in the Superior Court action were deemed admitted and that these were all incorporated into the present action. (JA207). The parties also agreed to a Consent Judgment of $3,200,000.00. (JA207).

Paragraph 4 of the Litigation Agreement provided for "upfront monies" paid to Plaintiffs, which included payment of Big Boss's automobile insurance from

Integon General Insurance ($100,000), seventy-five thousand paid out of pocket by

Big Boss, and twenty-five thousand paid by Harford Mutual.[2] (JA208).

Paragraph 5 of the Litigation Agreement states:

> If the Court determines that coverage exists under the Harford
> insurance policy(ies), then the Harford Insurers are obligated to tender
> the limits of insurance under the policy or policies that provide
> coverage, if any, as determined by the Court, the amount of such limits
> to be decided by the Court, but in no event shall the Harford Insurers
> be obligated to tender more than $1,000,000.00 under the NC
> Champions Policy (No. 9180396) and/or $2,000,000.00 under the Big
> Boss Excess Policy (No. 7981019).

(JA209). This paragraph sets the insurance limits for the policies.

In paragraph 6, the Litigation Agreement specifically states that the

Litigation Agreement does not relieve Harford of "any obligation to pay money

under the policies" if the Court decides the policy provides coverage:

> Further all Defendants in the Underlying Action agree **to assign all
> rights** under the Harford Insurers' policies to Erica Chambers, [J. H.],
> and [E. H.] in order to enable them to recover money under the policies
> upon a determination in the Declaratory Judgement Action that there is
> coverage. **The Harford Insurers specifically agree that this
> Agreement** and the Covenant Not to Enforce Judgment **in no way
> relieve the Harford Insurers of any obligation to pay money under the
> policies**, in the event the Court determines that the policy or policies
> provide coverage.

(JA209) (emphasis added). The Litigation Agreement did not modify the insurance

policy.

---

[2] The district court found that Harford does not get a credit for this. (JA636-637).
Harford does not challenge this on appeal.

## SUMMARY OF ARGUMENT

A plain reading of the Big Boss excess umbrella policy shows it provides coverage for the collision at issue in this case and that the Automobile Liability Exclusion does not exclude Plaintiffs' claim for negligent entrustment against Big Boss Construction. One of Defendants' primary arguments in support of their appeal—that the lower court wrongly determined the exclusion was ambiguous—is based on an incorrect reading of the district court opinion. The court concluded the opposite: "The Court therefore concludes that, **by its plain language**, the Big Boss Excess Policy's Automobile Exclusion does not preclude coverage for Plaintiffs' negligent entrustment claim against Big Boss." (JA586) (emphasis added). The reason for this is simple; Harford's inclusion and omission of the words "entrustment to others" in separate exclusions **in the same excess umbrella policy** shows where Harford intended to include or exclude coverage for negligent entrustment claims.

Alternatively, the exclusion is ambiguous, and the Court must construe it against Harford in favor of coverage. Recent court decisions analyzing this issue— whether an automobile exclusion without "entrustment" language excludes negligent entrustment claims—find the exclusion ambiguous and construe the policy in favor of coverage for the insured. In these cases, courts held coverage to exist notwithstanding that the policies at issue were not excess umbrella policies,

6

which are designed for broader coverage, and without the benefit of other exclusions in the same policy including "entrustment."

Judge Auld also correctly awarded pre- and post-judgment interest. The insurance policy specifically includes payment of interest on "any judgment" above insurance limits. The Litigation Agreement did not modify the policy and stated it "**in no way relieve[s] the Harford Insurers of any obligation to pay money under the policies.**" Harford waived its argument that there was no "judgment" and, even if it had not, there was both a consent judgment and a judgment entered against Harford in the district court.

For these reasons, the Court should affirm the judgment of the district court.

## **ARGUMENT**

### I.    **The District Court Correctly Determined That the Big Boss Excess Policy Afforded Coverage.**

#### A.    **The Excess Policy covers negligent entrustment claims.**

The insured has the burden to prove coverage under an insurance policy. *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 467 (N.C. 2000); *Allstate Ins. Co. v. Lahoud*, 605 S.E.2d 180 (N.C. App. 2004). Once the insured shows a prima facie case, the insurer then carries the burden of proving that an exclusion applies to limit coverage. *Id.*

At the district court level, Harford never argued that Plaintiffs had not met their burden of proof that the negligent entrustment claim fell within the coverage. Harford also never disputed that it had the burden of proof to prove an exclusion applied. Harford seems to change positions now and argue that Plaintiffs "failed to demonstrate that coverage for their claim was ever triggered under the Big Boss Excess Policy." (Brief of Appellants, ECF No. 25, at 22).

Although Harford argues for the first time on appeal that Plaintiffs have not met their burden of proof, Plaintiffs established a prima facie case for coverage. Specifically, the Big Boss excess umbrella policy states that it provides coverage for bodily injury claims caused by an "occurrence" which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (JA159). The Big Boss excess umbrella policy defines an "Insured" as any person operating an automobile and any organization responsible for the conduct of such driver. (JA149). By its terms, the Big Boss excess umbrella policy provides coverage for Plaintiffs' negligent entrustment claim against Big Boss. Because Plaintiffs met their burden of establishing coverage under the policy, Defendants bear the burden of proving an exclusion in their policy applies to limit coverage.

**B.    The plain language of the Automobile Exclusion in the policy does not exclude entrustment claims, and Defendant's argument is based on a misreading of Judge Auld's opinion.**

Harford argues that the district court "create[d] an ambiguity" by looking at the Aircraft and Watercraft Exclusion (DE 25, at 30). Harford's entire argument, that the court found the policy was ambiguous, rests on a misreading of Judge Auld's opinion.

The District Court construed the policy by its plain meaning and never reached any ambiguity analysis. (JA583-591) ("The Court therefore concludes that, by its plain language, the Big Boss Excess Policy's Automobile Exclusion does not preclude coverage for Plaintiffs' negligent entrustment claim against Big Boss."). As addressed in further detail below, Judge Auld correctly applied North Carolina law on the construction of insurance policies because he (1) construed the contract as a whole and gave the written terms their plain meaning and (2) narrowly construed the coverage exclusion.

      1.    <u>The District Court appropriately examined the insurance policy as a whole and used the plain meaning of the written terms to conclude that the exclusion does not exclude negligent entrustment claims.</u>

"'It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners,' by 'using the plain meaning of the written terms.'" *NovaQuest Cap. Mgmt., L.L.C. v. Bullard*, 498 F. Supp. 3d 820, 832 (E.D.N.C. 2020) (quoting *Ussery v. Branch Banking & Tr. Co.*, 777 S.E.2d 272 (N.C. 2015)). "All parts of a contract are to be given effect if possible. It is presumed that each part of the contract means something." *Id.* (quoting *Bolton*

*Corp. v. T.A. Loving Co.*, 347 S.E.2d 369 (N.C. 1986)). "Th[e North Carolina] Court [of Appeals] has long acknowledged that an interpretation which gives a reasonable meaning to all provisions of a contract will be preferred to one which leaves a portion of the writing useless or superfluous." *Southern Speeding Serv., Inc. v. E.C. Eng., Inc.*, 719 S.E.2d 211, 215 (N.C. App. 2011).

The same rules of contract construction apply to insurance policies. Under North Carolina law, the "interpretation of an insurance policy is based on the fundamental principle that the plain language of the policy controls." *NC Farm Bureau Mut. Ins. Co. v. Martin*, 851 S.E.2d 891, 895 (N.C. 2020); *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 692 S.E.2d 605, 612 (N.C. 2010) ("We deem all words to have been put into the policy for a purpose, and we will give effect to each word if we can do so by any reasonable construction." (internal quotations omitted)).

The District Court followed the letter of the law, applying "fundamental contract principles that require construing all clauses of a contract together, giving effect to each word, and avoiding constructions that render portions of a contract superfluous." (JA583). It is a basic tenet of contract law that courts may look at other terms and clauses in the same policy to construe them "harmoniously." *NC Farm Bureau Mut. Ins. Co. v. Martin*, 851 S.E.2d at 895 ("The various terms of the policy are to be harmoniously construed, and if possible, every word and every

10

provision is to be given effect.") (quoting *Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 777 (N.C. 1978)). Harford incorrectly argues that North Carolina law requires the court to first find the clause ambiguous before it can look to other clauses in the same contract. This is a misunderstanding of North Carolina law, which requires courts to construe all clauses together harmoniously and give effect to each word. *Id.*[3]

The policy's aircraft/watercraft exclusion explicitly excludes coverage for injuries "arising out of the ownership, maintenance, operation, use, loading or unloading or **entrustment to others** of any aircraft, unmanned aircraft, or watercraft." (emphasis added). By contrast, the automobile exclusion only excludes coverage for injuries "arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile." Entrustment to others is missing. To find that the Automobile Liability Exclusion excludes negligent entrustment claims would make Harford's use of "entrustment to others" meaningless. *See Fidelity & Cas. Co. of N.Y. v. North Carolina Farm Bureau Mut. Ins. Co.*, 192 S.E.2d 113, 117 (N.C. App. 1972) ("The terms 'ownership, maintenance or use' should not be treated as mere surplusage. They were placed in

---

[3] This is exactly what the District Court did. *See* (JA584) (stating that it must (i) "construe all clauses of an insurance policy together, if possible so as to bring them in harmony," (ii) "deem all words to have been put in to the policy for a purpose," and (iii) "give effect to each word if [it] can do so by any reasonable construction." (citing *Harleysville*, 692 S.E.2d at 612)).

11

the policy in order to cover situations distinct and separate from any other term.");

*Weyerhaeuser Co. v. Carolina Power & Light Co.*, 127 S.E.2d 539, 541 (N.C. 1962) ("When the language of a contract is clear and unambiguous, effect must be given to its terms, and **the court**, under the guise of constructions, **cannot** reject what the parties inserted or **insert what the parties elected to omit**.") (emphasis added).

> 2.      <u>Under North Carolina law, it does not matter that negligent entrustment claims are derived from the ownership, operation, or use of an automobile.</u>

Harford argues that "Plaintiff-Appellee's negligent entrustment claim is derived from the ownership, operation or use of an automobile, excluding it from coverage under the Big Boss Excess Policy." (ECF No. 25, at 24). This argument is immaterial to determining whether the Harford policy provides coverage for negligent entrustment claims.

Harford's argument disregards application of North Carolina law to insurance exclusions in three critical ways: (1) North Carolina courts **broadly** interpret language that **extends** coverage, (2) North Carolina courts **narrowly** construe provisions that **exclude** coverage, and (2) North Carolina courts extend coverage so long as the damage was caused by at least one non-excluded cause. Simply stated, Harford asks the Fourth Circuit to broadly construe language in the Exclusion in contravention of North Carolina law.

First, North Carolina courts narrowly interpret insurance exclusions and

broadly interpret coverage provisions:

> It is particularly important in the instant case to recognize that different rules of construction govern the interpretation of policy provisions which *extend* coverage as opposed to policy provisions which *exclude* coverage. In construing the coverage provision of the Nationwide automobile policy, we follow the rule that provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction. On the other hand, when construing the exclusion provision of the State Capital homeowners policy we are guided by the rule that provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured.

*State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 68 (N.C. 1986)

(emphasis in original) (internal citations omitted).

In *State Capital*, an individual was injured when he was accidentally shot as

a firearm was unloaded from a vehicle. *Id.* at 67-68. *State Capital* held that the

automobile liability policy covered the injury because the injury arose out of the

unloading and use of an automobile. *Id.* at 70. At the same time, the exclusion in

the homeowner's policy excluded coverage for damages "arising out of the

ownership, maintenance, use, loading, and unloading" of a motor vehicle. *Id.*

"Keeping in mind the rules of construction, that all ambiguities in exclusion

provisions are construed against the insurer and in favor of coverage," *State*

*Capital* held that the homeowner's policy provided coverage "notwithstanding the

exclusionary language." *Id.*

In coming to this conclusion, *State Capital* relied on the following language when discussing how "the rules of construction applied to an exclusionary clause are substantially different from the rules of construction applied to a coverage clause:"

> It is clear that the expression "use of an automobile" has different meanings under different circumstances and that, whenever possible, the Courts will apply an interpretation which gives, **but never takes away**, coverage for the "use" of an automobile, thereby causing automobile and non-automobile liability policies to overlap, notwithstanding the exclusion against the "use" of an automobile in most non-automobile liability policies.

*Id.* at 71 (emphasis added).

In *Nationwide Mutual Insurance v. Davis*, a truck hit a six-year-old girl as she began to walk across the road after she had exited a van driven by her grandmother (Ms. Davis). 455 S.E.2d 892, 893 (N.C. App. 1995). The issue in the case was whether the Davis's auto liability policy and homeowner's policy (with an automobile exclusion)[4] provided coverage for the negligent supervision claim against the grandmother. *Id.* Applying the rules from *State Capital* (see supra), *Davis* found that the automobile insurance provided coverage because provisions extending coverage "must be construed liberally so as to provide coverage,

---

[4] The Davis automobile exclusion excluded coverage for injuries "arising out of (1) the ownership, maintenance, use, loading, or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured." *Id.* at 895.

14

whenever possible by reasonable construction." *Id.* at 894 (quoting *State Capital*, 350 S.E.2d at 68). Crucially, *Davis* also found the homeowner's policy provided coverage despite the automobile exclusion because "[a]s a general rule, coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded." *Davis*, 455 S.E.2d at 895-96.

The *Davis* court reached this conclusion because (1) it liberally construed the automobile insurance policy to find coverage; and (2) it strictly construed the automobile exclusion in the homeowner's policy against the insurance company to similarly find coverage. *Id.* at 894-96.

*Davis* and *State Capital* establish that even though the "use" of an automobile may proximately cause the injuries, an insurance policy may still cover the claim, despite an automobile exclusion, so long as there is a non-excluded cause. *See e.g.*, *State Capital*, 350 S.E.2d at 73 (Insurance policies "provide coverage for injuries so long as a non-excluded cause is either the sole or concurrent cause of the injury giving rise to liability."); *see also Dodd v. Auto. Ins. Co. of Hartford*, No. 2:05 CV 216, 2007 WL 203983, at *6 (W.D.N.C. Jan. 24, 2007) ("[T]he correct and prevailing view in North Carolina is that '[a]s a general rule, coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded,' but if an excluded source of liability is the 'sole cause of the injury,' then the policy does not provide

coverage[.]'"). Like the van owner's negligent supervision in *Davis*, Big Boss's negligent entrustment of its truck to an unlicensed and undocumented worker was a non-automobile proximate cause of Plaintiffs' injuries. Big Boss's actions in negligently entrusting its vehicle predates the tortious activity of the driver Carlos Ramirez. Although Ramirez's operation of the vehicle was a proximate cause of Plaintiffs' injuries, it is not the sole proximate cause. Big Boss's negligent entrustment of its truck was a separate proximate cause of Plaintiffs' injuries, and the policy does not exclude coverage.

In support of its argument for a broad construction of the exclusion, Harford argues that negligent entrustment claims require establishing proof of ownership as an element of the tort claim. (ECF No. 25, at 25-26). Harford then cites a 1989 Seventh Circuit Court of Appeals case, *Standard Mutual Insurance Company v. Bailey*, a case interpreting a homeowners' policy. 868 F.2d 893 (7th Cir. 1989). Harford also cites *Wilkins v. American Motorists Insurance Company*, a case analyzing whether an aircraft exclusion excludes a negligent instruction claim from coverage. 388 S.E.2d 191 (N.C. App. 1990). However, this case (a) did not involve a negligent entrustment claim, (b) did not involve an insurance policy containing exclusions similar in form but with different exclusionary language, (c) did not involve an excess or umbrella policy, and (d) cited to older cases from the 1980's and 1970's from other jurisdictions. *See id.*

16

Since then, more recent cases deciding this issue have held the opposite, concluding that the provision is ambiguous and must be construed against the insurance company. *Estate of Mitchell v. American Reliable Ins. Co.,* 349 F. App'x 151 (9th Cir. 2009) ("The provision excluding injuries 'arising out of' the use of a motor vehicle is 'reasonably subject to more than one interpretation.' Thus, whether the [policy] covered a claim for negligence independent of the use of a vehicle, such as the [plaintiff's] claims for negligent supervision and negligent entrustment, is ambiguous under Montana law[5] and must be construed against [insurance company]."); *E.g., Marquis v. State Farm Fire and Cas. Co.*, 961 P.2d 1213 (Kan. 1998) (allowing coverage for negligent supervision and hiring even where the auto exclusion specifically named "entrustment").

This recent trend is actually in line with *Standard Mutual*, which stated "[d]espite our ultimate conclusion in this case, we find it curious that in view of the plethora of litigation on this issue, the insurance industry has not simply added the word 'entrustment' to the standard provision excluding claims 'arising out of the ownership, maintenance, use, loading or unloading of a motor vehicle owned by any insured.'" *Standard Mutual*, 868 F.2d at 901 n.11. Since the Seventh Circuit decided *Standard Mutual*, the insurance industry has had thirty-five years to add

---

[5] Like North Carolina, Montana also narrowly construes exclusions and construes ambiguities against the insurer. *Estate of Mitchell*, 349 F. App'x at 153.

"entrustment" to Automobile Exclusions (like it did with the Aircraft and Watercraft Exclusion), so it makes sense that more recent cases are coming to different conclusions.[6]

### C. Alternatively, the policy language is ambiguous, and the Court must construe it to provide coverage.

If the Court finds that Harford's omission of the term "entrustment to others" in the Automobile Liability Exclusion is not dispositive, the exclusion is at best ambiguous and must be construed against Harford and in favor of coverage. "To exclude coverage, exclusion clauses must be drafted in clear and unambiguous terms." *State Capital*, 350 S.E.2d at 72. A provision is ambiguous when it could reasonably support "either of the constructions for which the parties contend." *NC Farm Bureau Mut. Ins. Co. v. Martin*, 851 S.E.2d at 895-96. "Provisions which exclude liability of insurance companies are not favored." *State Capital*, 350 S.E.2d at 73. "[A]mbiguous terms and standards of causation in exclusion provisions…must be strictly construed against the insurer." *Id.*

---

[6] Harford also argues that Big Boss itself "did not reasonably believe that its CGL policy and the Excess Policy above that CGL Policy would afford automobile liability coverage." (ECF No. 25, at 32). However, "[t]he test in construing the language of the contract (an insurance policy) is not what the insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood them to mean." *Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 779 (N.C. 1978). Harford never argued what Big Boss "believed" at the district court level. In reality, Big Boss believed that the policy provided coverage and even tendered the claim to Harford back in 2019. (JA204-205).

The rule that ambiguities in contract terms must be construed most strongly against the drafting party "rests on a public policy theory that the party who *chose* the word is more likely to have provided more carefully for the protection of his own interests, is more likely to have had reason to know of uncertainties and may have even left the meaning deliberately obscure." *Joyner v. Adams*, 361 S.E.2d 902, 905 (N.C. App. 1987) (noting that courts apply this rule for adhesion contracts or where one party is in a stronger bargaining position). This rationale is equally applicable to insurance contracts: "North Carolina courts, recognizing insurance contracts are those of adhesion, have not invalidated them, but merely subject them to greater scrutiny." *Wilkerson ex rel. Estate of Wilkerson v. Nelson*, 395 F. Supp. 2d 281, 289 (M.D.N.C. 2005) (citing *id.*).

Other courts interpreting automobile exclusions with similar language have found the exclusions ambiguous. These courts have held the exclusions to be ambiguous because they are "reasonably subject to more than one interpretation" and it cannot be "plain and free from ambiguity, since a number of courts have been presented with the identical issue and are divided as to the proper interpretation." *See Estate of Mitchell v. American Reliable Ins. Co.*, 349 F. App'x 151, 153 (9th Cir. 2009) (determining that whether a policy excluding injuries "'arising out of'" the use of a motor vehicle" covered a claim for negligence independent of the use of a vehicle, such as negligent supervision and negligent

entrustment, is ambiguous and "reasonably subject to more than one interpretation"); *Douglass v. Hartford Ins. Co.*, 602 F.2d 934, 938 (10th Cir. 1979) (concluding that negligent entrustment claims are not within the scope of an exclusion for "ownership, maintenance, operation, use, loading or unloading" because it is not "plain and free from ambiguity, since a number of courts have been presented with the identical issue and are divided as to the proper interpretation"); *Upland Mut. Ins. Inc. v. Noel*, 519 P.2d 737 (Kan. 1974) (holding there was coverage for negligent entrustment where the policy excluded "ownership, maintenance, operation, use, loading and unloading of (1) automobiles"); *Cone v. Nationwide Mut. Fire Ins. Co.*, 551 N.E.2d 92 (N.Y. 1989) (negligent entrustment did not fall within exclusion "arising out of the ownership, maintenance, or use of" a motor vehicle).

These courts reached this conclusion even without the added benefit of exclusions in the same policy using the missing term "entrustment to others," as well as the fact that this is an excess umbrella policy, which consumers buy for the purpose of obtaining broader coverage than a general liability policy.[7]

Harford cites to a few, older cases reaching a different result. These cases only serve to demonstrate the ambiguity of the policy language: In North Carolina,

---

[7] JA526 (Defendants conceded that "[t]he definition of 'excess insurance' is not at issue here.").

"[i]f courts, construing almost identical language, cannot agree on how the relevant provisions should be construed, then it seems likely that the language is ambiguous." *N.C. Counties Liability and Prop. Joint Risk. Mgt Agency v. Currey*, 662 S.E.2d 678, 682-83 (N.C. App. 2008). Additionally, "[t]he fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is at best, ambiguous." *Brown v. Lumbermens Mut. Cas. Co.*, 390 S.E.2d 150, 153 (N.C. 1990).

If the Court finds that the plain language of the Automobile Liability Exclusion does not control, the omission of the term "entrustment to others" from that exclusion where it is included in other similar exclusions in the same policy, makes the automobile exclusion subject to different reasonable applications to negligent entrustment claims like Plaintiffs' claim in this case. Different reasonable interpretations make the exclusion ambiguous. The Court must then strictly construe it against the insurer and in favor of coverage. *See supra*, *Douglass*, 602 F.2d at 938; *Estate of Mitchell*, 349 F. App'x at 153; *State Capital*, 350 S.E.2d at 73. The result may not be what Harford now desires, but North Carolina law does not place the burden for an insurer's choice of ambiguous language on an injured person, or on the court:

> [I]t is not the function of the court to sprinkle sand upon the ice by strict construction of the term.... If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than

it contemplated, the fault lies in its own selection of the words by
which it chose to be bound.

*Cowell v. Gaston County*, 660 S.E.2d 915, 918 (N.C. App. 2008) (quoting *Grant v.*

*Emmco Ins. Co.*, 243 S.E.2d 894, 897 (N.C. 1978)).

## II.    **The District Court correctly determined Harford is obligated to pay interest.**

At the trial court, Harford argued that the Policy by its terms and express

language did not provide for pre- or post-judgment interest in excess of the

insurance limits. (JA605-606). The district court rejected this argument because the

policy explicitly says it will pay interest over and above the insurance limits.

Harford does not challenge this on appeal. Whether the policy itself provides for an

award of interest is not at issue: it does and it provides for payment of interest

above and in addition to the insurance limits. (JA631).

The court also ruled that pre-judgment interest began on October 2, 2019,

when Plaintiffs filed the underlying suit (JA634), and that post-judgment interest

started when the District Court entered judgment on June 20, 2023 (JA637).

Harford does not challenge this on appeal.

### A.    **Although a valid contract, the Litigation Agreement does not modify the interest provisions in the insurance policy.**

The North Carolina Supreme Court ruled that, "the language of a liability

carrier's policy controls the liability carrier's obligation to pay prejudgment

interest in addition to its stated limits." *Nationwide Mut. Ins. Co. v. Mabe*, 467

S.E.2d 34, 39 (N.C. 1996). Paragraph 5 of the Litigation Agreement states:

> If the Court determines that coverage exists under the Harford insurance policy(ies), then the Harford Insurers are obligated to tender the limits of insurance under the policy or policies that provide coverage, if any, as determined by the Court, the amount of such limits to be decided by the Court, but in no event shall the Harford Insurers be obligated to tender more than $1,000,000.00 under the NC Champions Policy (No. 9180396) and/or $2,000,000.00 under the Big Boss Excess Policy (No. 7981019).

(JA209). This paragraph sets the insurance limits for the policies. It does not

modify any payment provisions or interest payments allowed under the policy or

provided by law.

In paragraph 6, the Litigation Agreement specifically states that the

Litigation Agreement does not relieve Harford of "any obligation to pay money

under the policies" if the Court decides the policy provides coverage:

> Further all Defendants in the Underlying Action agree ***to assign all rights*** under the Harford Insurers' policies to Erica Chambers, [J. H.], and [E. H.] in order to enable them to recover money under the policies upon a determination in the Declaratory Judgement Action that there is coverage. ***The Harford Insurers specifically agree that this Agreement*** and the Covenant Not to Enforce Judgment ***in no way relieve the Harford Insurers of any obligation to pay money under the policies***, in the event the Court determines that the policy or policies provide coverage.

(JA209) (emphasis added).[8] The Litigation Agreement did not modify the insurance policy.

Harford's argues, for the first time on appeal, that the "upfront monies" and "whereas" sections in the Litigation Agreement support its position interest cannot be awarded on the Court's entry of judgment. First, Harford did not argue this at the district court level. "When a party in a civil case fails to raise an argument in the lower court and instead raises it for the first time before us, we may reverse only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice." *In re Under Seal v. Lavabit, LLC, et al.*, 749 F.3d 276, 285 (4th Cir. 2014). The burden is on the party who failed to preserve the argument. *Tarashuk v. Givens*, 53 F.4th 154, 167 (4th Cir. 2022). If the appellants do not try to address the "fundamental error" standard, they do not meet their burden and the court will not entertain the argument. *Id.* Harford has not addressed this and waived this argument.

Second, even if it hadn't, these clauses do not address interest. The parties do not relinquish any right to interest anywhere in the Litigation Agreement.

Third, although the parties sought to reduce risk to all, the Litigation Agreement was never intended to, and in fact does not, re-write the insurance policy.

---

[8] Harford does not mention this clause anywhere in its opening brief.

Finally, the District Court did not modify the Litigation Agreement – he enforced it by its plain terms. Addressing Harford's contention that interest is not awardable under the Litigation Agreement, Judge Auld's opinion specifically states:

> To the contrary, the Litigation Agreement explicitly provides that
>
>> it is the Parties' mutual intent that all coverage issues pending in the Declaratory Judgment Action, *including the issue of indemnification*, remain ripe. . . . Further, all [d]efendants in the Underlying Action agree to assign all rights under the Harford Insurers' policies to [Plaintiffs] in order to enable them to recover money under the policies upon a determination in the Declaratory Judgment Action that there is coverage. *The Harford Insurers specifically agree that th[e Litigation] Agreement* and the Covenant Not to Enforce Judgment *in no way relieve the Harford Insurers of any obligation to pay money under the policies*, in the event the Court determines that the policy or policies provide coverage.
>
> (Docket Entry 22-6 at 4 (emphasis added).) As noted, the Big Boss Excess Policy provides indemnification for prejudgment (and post judgment) interest above the limits of liability. (See Docket Entry 22-4 at 10.) Thus, the Litigation Agreement specifically contemplates indemnification of Plaintiffs for prejudgment (and post-judgment) interest under the Big Boss Excess Policy above the $2 million policy limit, belying Defendants' contentions. As such, Defendants' contentions on this front lack merit.

(JA634).

**B.    Harford waived all arguments that they do not have to pay interest because there is no judgment.**

On appeal, Harford argues—without any supporting authority—that the "Consent Judgment cannot serve as the basis for pre-judgment or post-judgment interest." (DE 25, at 37). Harford did not properly raise this issue in the district court and waived it. Judge Auld ruled that:

> In their reply brief, Defendants additionally assert, for the first time, that "[t]he Policy only contemplates payment of judgment interest on a judgment" and, "[b]ecause no judgment has been entered [in the Underlying Litigation], the Supplementary Payments provision of the Policy does not apply." (Docket Entry 42 at 3 (bold font omitted); see id. at 2-4.) As an initial matter, "[t]he Parties [to the Litigation Agreement] agree[d] to a Consent Judgment against Big Boss, NC Champions, and Carlos Alberto Ramirez in the amount of $3,200,000.00, which is attached and incorporated as Exhibit A [to the Litigation Agreement]." (Docket Entry 22-6 at 2.) The existence of that Consent Judgment, regardless of its filing, undercuts Defendants' new argument. In any event, "[a] party waives an argument by failing to present it in its opening brief or by failing to develop its argument — even if its brief takes a passing shot at the issue." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (brackets and internal quotation marks omitted). Because Defendants failed to develop such argument in their initial memorandum (see Docket Entry 40 at 1-8), they waived it, see *Grayson*, 856 F.3d at 316.

(JA628).

Waived arguments are not reviewable by the Court of Appeals. *United States v. Boyd*, 5 F.4th 550, 554 (4th Cir. 2021). Even if Appellant's argument was reviewable, the Fourth Circuit reviews "a district court's decision to consider a waived argument for abuse of discretion." *De Simone v. VSL Pharmaceuticals,*

*Inc.*, 36 F.4th 518, 531 (4th Cir. 2022). Harford has not argued that Judge Auld erred by ruling that Harford waived this argument. In fact, Harford does not address waiver at all.

Regardless of waiver, the insurance policy specifically states that it will pay interest awarded on "any judgment." (JA148). There are two possible judgments for interest to attach: (1) the Consent Judgment from the Underlying Litigation and (2) the Declaratory Judgment.

A pretrial stipulated judgment (also known as a consent judgment) may serve as an enforceable judgment for the purposes of payment of interest by an insurer even where the insurer did not consent to the stipulated judgment. *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 432-35 (Colo. 2008) ("[T]he fact that the settlement agreement was entered into before trial does not make [the stipulated judgment] per se invalid."). Under that fact pattern, "[t]he majority rule in states that have considered this issue is that a pretrial stipulated judgment may be enforceable against the defendant's liability insurer if the insurer breaches it contractual obligation to defend the insured." *Id.* at 432. The reasoning for this is that the insured "should be allowed to protect itself by shifting the risk to the breaching insurer without first subjecting itself to potential financial ruin." *Id.* at 433-34. In *Ross*, the court held the stipulated judgment unenforceable because the

insurer conceded coverage, defended its insured, did not act in bad faith, and was not a party to the stipulated judgment. *Id.* at 434.[9]

Unlike in *Ross*, Harford never conceded coverage nor defended its insured. Harford also was a party to the Consent Judgment. The Litigation Agreement states that the "Parties hereby agree to a Consent Judgment against Big Boss, NC Champions, and Carlos Alberto Ramirez in the amount of $3,200,000.00, which is attached and incorporated as Exhibit A." (JA207).

Regardless of whether Harford waived this argument or whether the consent judgment may serve as a judgment for interest purposes, interest attaches to declaratory judgments. Under federal law, declaratory judgments "shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201 (Chapter 151, "Declaratory Judgments); see Fed. R. Civ. P. 57 ("These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."). Interest attaches to the declaratory judgment entered here because it has "the force and effect of a final judgment." *See also* 28 U.S.C. § 1961(a) ("**Interest shall be allowed on any money judgment in a civil case recovered in a district court**." (emphasis added)). Plaintiffs requested "[p]re-

---

[9] The court had entered the stipulated judgment in *Ross*. *Id.* However, the court focused on whether the judgment was *enforceable*. *Id.* Here, the Consent Judgment was enforceable because the parties made it effective when they agreed to the Litigation Agreement, a binding contract. (ECF No. 25, at 33 (where Harford states, "The Litigation Agreement is a valid contract.")).

judgment and post-judgment interest as provided by law" in the Complaint for
Declaratory Judgment. (JA23).

This result aligns with the purpose behind interest, which is to compensate
the successful plaintiff who is deprived of compensation for her injury. *Gilliam v.
Allen*, 62 F.4th 829, 848 (4th Cir. 2023) ("Prejudgment interest serves to
compensate for the loss of use of money due as damages from the time the claim
accrues until judgment is entered, thereby achieving full compensation for the
injury those damages are intended to redress."); *Quesinberry v. Life Ins. Co. of N.
Am.*, 987 F.2d 1017, 10301 (4th Cir. 1993) ("[T]he purpose of post-judgment
interest is to compensate the successful plaintiff for being deprived of
compensation for the loss from the time between the ascertainment of the damage
and the payment by the defendant."). Requiring Harford to pay interest is not a
harsh result since it has had the opportunity to invest this money during the four-
year pendency of this suit, and it is within its power to stop the accrual of interest
by offering its policy limits. *See Baxley v. Nationwide Mut. Ins. Co.*, 430 S.E.2d
895, 900 (N.C. 1993).

## **CONCLUSION**

By its plain language, the Big Boss commercial excess umbrella policy
provides coverage for Plaintiffs' negligent entrustment claims. Alternatively, the
language of the Big Boss policy is ambiguous and must be construed in favor of

coverage of those claims. In either case, Plaintiffs' claims against Big Boss are covered by the $2,000,000.00 Harford policy, which also provides for payment of interest on the judgment entered in this case.

For decades courts have held that coverage exists for negligent entrustment of automobile claims where insurance policies do not include the term "entrustment to others" in automobile exclusions. Like these insurance policies, Harford's automobile exclusion does not include "entrustment to others" within its scope. Harford nevertheless now asks the Court to do what it did not: insert that term into its policy to exclude coverage for Plaintiffs' negligent entrustment claims.

Plaintiffs have fought through four years of litigation to prove their case and hold Harford to the language of its insurance policy. Plaintiffs respectfully request the Court do the same and affirm the District Court's opinion and order that the Harford policy provides $2,000,000.00 in coverage for Plaintiffs' claims as well as pre- and post-judgment interest.

This the 2nd day of November, 2023.

**LAW OFFICES OF JAMES SCOTT FARRIN**

By:    /s/ Kaitlyn E. Fudge
       Coleman M. Cowan - NC Bar No. 21997
       Kaitlyn E. Fudge - NC Bar No. 54829
       555 S. Mangum Street, Suite 800
       Durham, North Carolina 27701
       Telephone: (919) 688-4991
       Facsimile: (919) 688-4468
       Email: ccowan@farrin.com
       Email: kfudge@farrin.com
       *Counsel for Plaintiffs-Appellees*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs believe the issues on appeal are straight forward and can be decided based on the arguments. However, Plaintiffs welcome the opportunity to present oral argument should the Court seek clarification on any points presented in the Parties' briefs.

This the 2nd day of November, 2023.

**LAW OFFICES OF JAMES SCOTT FARRIN**

By:      /s/ Kaitlyn E. Fudge
Coleman M. Cowan - NC Bar No. 21997
Kaitlyn E. Fudge - NC Bar No. 54829
555 S. Mangum Street, Suite 800
Durham, North Carolina 27701
Telephone: (919) 688-4991
Facsimile: (919) 688-4468
Email: ccowan@farrin.com
Email: kfudge@farrin.com
*Counsel for Plaintiffs-Appellees*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 23-1733     **Caption:** J.H., et al. v. Harford Mutual Insurance Group, Inc., et al

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 ords or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 ords or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word processing program must be set to include adings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type- olume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains ____7065____ [*state number of*] words

☐ this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 365 _____ [*identify word processing program*] in
Size 14; Times New Roman _____ [*identify font size and type style*]; **or**

☐ this brief or other document has been prepared in a monospaced typeface using
_____ *identify word processing progra* ] in
_____ [*identify font size and type style*].

(s) /s/ Kaitlyn E. Fudge _____

Party Name Appellees, J.H., E.H., et al. _____

Dated: 11/2/2023 _____

04/12/2020  SCC